The fourth case for argument is John Baldwin v. Union Pacific Railroad. Mr. Castor? Thank you, Your Honor. Jim Castor for the appellant. I will reserve five minutes for rebuttal. Demonstrating error, material error, in the jury instruction 29 is not difficult in this case. The court, this court, said recently in the Sanders decision, Sanders v. Union Pacific, Union Pacific was required to show that its determination that Sanders posed a direct threat was the result of an individualized assessment, two, objectively reasonable, and three, based on the most current medical knowledge and or on the best available objective evidence. The citation in that is to 29 CFR 1630, which says the same thing. It's the Code of Federal Regulations, the Bragdon case, and this court's case in EEOC v. Walmart stores from 2007. The jury instruction in this case bears no resemblance to that and does not require the best available objective evidence or the most current medical knowledge. That key element is missing. Everyone, everyone in this case agreed that it should be in the instruction. This is how this happened. If you go to our appendix at 170, you will see I make the argument that this sentence, this standard of proof needs to be in the instruction. Union Pacific objects and says it's not in the pattern instruction. The court says, Mr. Castro, I don't know that I disagree with your argument, but I'm not putting it in the instruction. It's not in the pattern. Union Pacific, in their proposed instructions, in what might be regarded as a Freudian slip, but clearly recognition that this sentence needs to be there, adds this to the pattern instruction. This assessment must be based on a reasonable medical judgment that relies on the most current medical knowledge and or the best available objective evidence. They inserted the very sentence that they objected to that is not in the pattern. The pattern instruction is wrong and ignores precedent from this circuit, from the U.S. Supreme Court in Bragdon and Chevron, and it's critically important because this is the kind of evidence that Union Pacific needed to have to demonstrate that Mr. Baldwin was a direct threat. The best available objective evidence, what was relied on here, a non-diagnostic stress test, a treadmill test, for a man with two prosthetic hips. That was what was relied on to determine that he had cardiac disease or heart disease and permanently restrict him from work. Under Blanker v. Warren, this court said that allowing a party, in that case the plaintiffs, to prevail without proof of a key essential element of the proof. And these are two elements now of the three elements that are missing from the pattern, the objectively reasonable standard and the best available proof standard. Those are both missing from the pattern. Allowing a party to prevail without proof of an essential element is reversible error. So. Not if it's harmless. Not if it's harmless. So if we're talking about harmless error, I'll get to that, Your Honor. If the court chooses, I can get to that now. That error does not exist in a vacuum in this case because the jury instruction 29 also doesn't assign the burden of proof to the defendant. It doesn't clearly assign the burden of proof. It doesn't assign the burden of proof at all. Union Pacific recognized this in response to this question from a juror at the beginning of the case. Right after voir dire, a juror submitted this question. Question number two. Counsel for the plaintiff stated that the burden of proof lies with the defendant to show by preponderance of evidence that it should not accommodate the needs of the plaintiff. Does the plaintiff have a burden of proof to show that he should be accommodated? This shows several things. First of all, this is right after voir dire. Voir dire is not transcribed. I don't remember what I said about the burden of proof in voir dire, but if it's talking about them having the burden on the accommodation claim, it's in the context of direct threat. Because that's the only time that Union Pacific would have the burden. In any case, the juror understands a couple things. These burdens can be nuanced. As you see in instruction 22, the burden shifts back and forth. That's the interactive process. Both lawyers, you tried the case, I think.  I don't know if your colleague did or not. I don't remember. She did. So both of you argued the correct burden of proof, did you not, on the direct threat. And our Worcester case, I may be botching pronunciation, suggests at least, arguably suggests, that when that happens, there's no, I forget the holding, but basically it's there's no harmless error. In other words, the error in the instructions on the burden of proof has been cured. Why, when you had both, you both knew what was going on and you both argued the correct standard to the jury, why doesn't that sink your case at least on the burden of proof? Well, with respect to the burden of proof, because the judge told the jury the opposite. And the judge told the jury that we don't give them the law. Which is accurate, though, right? I mean. They don't. This question appreciates that. But we always give that instruction. I mean, I've presided over, I'm not kidding you, 400 jury trials in my career, 25 years I sat as a trial judge, and there's not a single one of them where I said you have a duty to accept the law from the judge and what the lawyers say aren't the law. But we do have a body of cases that have gone on, you know, like since, you know, territorial times in these states, in our circuit, that says, oh, yeah, but when both sides argue the same law and no objection is raised and the burden of proof as given in the instruction is ambiguous, as it just says, if it is proved, right? That's where we start. Proved? Proved by who? For why, what, and how? You know, I mean, I get those are real questions. But when everybody's making the same argument about how it's proved and who has the burden of proof, we have a long line of cases that say whatever that is, there's no prejudice. Your Honor, I would say on the Worcester case, that's related to assumption of risk. In that case, in the double presentation of assumption of risk in two different instructions. So you're denying there's a long line of cases? I'm not denying that there's a long line of cases. I apologize for not responding directly. Yeah. And they mostly come out of, like, criminal cases, right? Yeah. I mean, you know, like. Right. But if a criminal case was given without the required burden of proof, I can't imagine that that would happen, Your Honor. But in this particular case, the burden. The cases that I have seen, I have not seen a case that says the burden of proof. Errors in the burden of proof would be harmless error. It's such a central issue. In the Worcester case, I don't believe addresses burden of proof directly. What the courts have said in, like, the Thompson case, is the burden of proof issue is never harmless error. In Blacker v. Two, the court said that even if the jury's decision might come out the same, that when an error exists in the burden of proof, that is problematic and gives rise to a new trial. Do those apply to affirmative defenses, those cases you were citing?  Do those apply to affirmative defenses? Was this the burden on the affirmative defense here? Is that correct? That was the burden on the affirmative defense. Does that make a difference? It makes a difference in the sense that that is the dispositive issue that resolved the case. Mr. Baldwin prevailed on his perceived disability claim. The only thing that prevented him from getting to damages was the affirmative defense. They have the burden on that affirmative defense, and clearly, in response to this question, the judge says, my instructions will answer all your questions. And then five times in the next three pages, he says, the plaintiff has the burden of proof. So the court is, and the jury is, jury is appreciating here that I don't give him the law, or her, and I don't recall who it was, but I don't provide the law. The judge then turns around and says, the plaintiff has the burden of proof, and never once, never once tells the jury that Union Pacific has the burden of proof. And my friend on the other side did not say, she said they met the burden. But let's step back. Burdens sometimes shift back and forth. And so this question appreciates that. The simple, and so none of that is articulated. The judge never says that Union Pacific has, not once, that Union Pacific has the burden of proof. As in Block of B-2, this is a compound error. And I'll get to the question of harmless error, but I'm going to reserve the balance of my time for rebuttal. Thank you. Back again. Yes. Hello. May it please the Court. Again, my name is Allison Bayless, and in this matter, I represent the appellee Union Pacific Railroad Company. The jury's verdict in this case came after six and a half days of testimony. In which three physicians testified live and talked about complex medical evidence. Dr. John Holland, the former chief medical officer of Union Pacific Railroad, was on the stand over the course of three days. And at the conclusion of all of that, the jury found that Mr. Baldwin posed a direct threat to himself in the workplace. The jury's verdict and the district court's denial of the motion for a new trial should be affirmed for two reasons. Number one, the jury instructions, taken as a whole, fairly and adequately represent the applicable law. None of them expressly misstate the law, as in the cases the appellant relies on. And number two, even if the jury instructions were not technically perfect or the model of clarity, any error was harmless because it neither misled the jury nor had a probable effect on the outcome. And I want to start with what Judge Erickson pointed out, which was it is improbable that the jury was misled or that any purported error had any effect on the verdict when both sides were crystal clear and in sync in explaining during closing arguments that Union Pacific had the burden of proof. When was the question that we've been talking about, about the burden of proof, when was that submitted to the court from the jury? Was that during deliberations? No. The question from the juror on the burden of proof, first of all, was on the reasonable accommodation claim, not on the direct threat defense. And it came after voir dire, so before any instructions had been given. Is it accurate, though, that there was no response? I mean, the response was, read the jury instructions, right? The response was, yes, I will instruct. And immediately thereafter, the burden of proof was discussed multiple times without breaking down affirmative defenses versus the case in chief, and that was the burden was always placed on the plaintiff? That is correct. And it's understandable because for the most part, the plaintiff did have the burden of proof on all of the claims he brought. The problem, though, is the case turned on what wasn't for the most part here, right, on the affirmative defense. That's correct. But there was no misallocation of the burden in the jury instruction on direct threat. And the appellant's argument makes little sense given the language of that instruction. The jury simply could not have concluded from that instruction that Mr. Baldwin bore a burden to prove he was not a direct threat because that's not what the jury instructions said. It required proof that Mr. Baldwin posed a direct threat in the affirmative, not in the negative. And nothing in the jury instructions required proof that Mr. Baldwin was not a direct threat. I'm less concerned about that burden of proof, and I know we spent a whole lot of time arguing about it. What I'm really more concerned about myself is the whole question about, you know, the instructions should say that it's based on a reasonable medical judgment that relies on the most current medical knowledge and or information, right? That's really, you know, the problem here. I mean, you know, because I think we can say, well, we all argued about the burden of proof. We all acknowledged what it was. Nobody could be misled. Okay, fine. But there's this big elephant in the room, and that's the gaping hole in what we told them. And I'd be even less concerned about that if somehow it had been the focal point of discussion in the closing arguments. It wasn't. It would have made more sense to me if somebody had laid it out plainly and the doctors testified. But I keep coming back to what Dr. Holland actually said. And, you know, at one point he's asked a question about, you know, about the best medical evidence and whether it lives only in articles or journals or what does that mean. And he comes back and he says, listen, I don't know what to make of this. I mean, the way best evidence is used in medicine is it talks about the evidence in scientific journals. It's not talking about what you do, you know, what you should do next in your practice, like necessarily. It's really a broader term that just says how good is this evidence in those scientific journals. I mean, so it's not trying to direct your practice, but really it's just a general statement of quality. And that's the kind of quality of the medical testimony that you say is clear so it's harmless. And that's where I'm starting to hang up. I keep looking at it saying, I mean, this pattern jury instruction misses the boat, at least in part. Now, there are circuits where it maybe isn't missing the boat, right? I mean, and it just depends on our case law as opposed to, like, what the law may be in the Ninth Circuit or something, right? But the problem with what our law says is that this really is something we should at least be thinking about. It's not in there. And then we have this kind of waffly testimony from Dr. Holland. Now, maybe the other three doctors have said something that clears this all up, but, I mean, I don't know what the jury is supposed to make of all that. I don't know how they get to the direct threat evidence and how they actually analyze it without knowing what the rubric is that we're supposed to analyze it under. So, first, Judge Erickson, I disagree that neither side explained this in closing arguments. Both sides talked about requiring the best available medical evidence. And Union Pacific argued that its evidence was best. But the instruction isn't erroneous. It does omit some elements that needed to be proved. But, again, under your opinion in Worcester, that could be explained to the jury during closing arguments, and it was. The argument here that it should have been — Was it explained, though? I mean, when I look at it, I mean, we're talking about the evidence in the record, right, blah, blah. But, you know, I didn't see any specific evidence or arguments that were advanced that, you know, within the medical community, this is the best available evidence. Was that made? And I just missed it. Because if possible, I don't read things as clearly as I should. I think it's unclear how the jury could have been misled that Union Pacific didn't have to have the best available medical evidence. If the jury hadn't believed Union Pacific's medical evidence that it presented was the best, if it had believed, for example, Appellant's medical evidence was better, it would not have found, as it did, that Mr. Baldwin posed a direct threat in this case. So basically the finding of the direct threat itself is evidence that they weighed that question? I believe so. I mean, they were presented medical evidence on both sides in order to decide that Mr. Baldwin was a direct threat, which is what the direct threat instruction says. It doesn't actually say anything about whether the determination had to be reasonable or unreasonable, which I would say actually harmed Union Pacific more than it harmed the Appellant, right? Because it's an easier burden to prove that we were objectively reasonable in finding that he was a direct threat as opposed to he actually – we proved he was a direct threat. But the evidence that it weighed included medical evidence on Union Pacific – that Appellant presented. And clearly from the verdict, the jury determined that the best medical evidence was presented by Union Pacific. Now, what Union Pacific presented was Dr. Holland's testimony about his medical judgment as the chief medical officer with years of experience in evaluating employees for fitness for duty and railroad positions, an exercise tolerance test, which even Appellant's expert admitted was something that he himself used extensively. And he admitted to having removed another employee from a job because he couldn't attain 10 METs on an ATT. Appellant argues that other physicians cleared Mr. Baldwin to return to work, but not for his aerobic capacity. None of the other physicians looked at his aerobic capacity, which was really the issue. It is kind of the issue, but there's also some characterization. Is it a cardiac incident, a cardiac problem, where of course it could just be deconditioning because the guy's had two hips replaced and doesn't – and has lived a mostly sedentary lifestyle, which tells us not so much about the heart, although he is at an age where hearts start to matter. And so I get all that. Does that matter at all? I mean – I don't think so because Dr. Holland admitted that he maybe erroneously assumed that Mr. Baldwin had a cardiac – a heart issue. But Dr. Lowe's, the only cardiologist testifying the case, said that that wasn't the issue. Mr. Baldwin, there was no evidence that he had a heart condition. His concern was the aerobic capacity and that if he had pushed himself doing strenuous exercise, which is what his job required, he would have been at risk for a cardiovascular event or a heart attack. And Dr. Holland presented journal articles from peer-reviewed journals, two of them, that he read to the jury and that were never shown to be unreliable by the appellant, that he said he relied on in coming up with 10 METs as the benchmark for when there's concerns about someone's aerobic capacity in a moderate to strenuous job, that he relied on those articles as the best available medical evidence at the time to determine that 10 METs should be the threshold in order to keep that employee safe. Did any of the other medical witnesses testify about that issue? Yes. So, appellant's expert witness talked about how he disagreed. He didn't really comment on the articles themselves, but he said, you know, 10 METs is a pretty high standard. I don't believe that that's high enough. But what Dr. Lowe's, again, the only cardiologist who testified, explained was that his opinion, because Mr. Baldwin could not attain 10 METs, is that he would be reasonably safe performing a job where he performed 60% of his peak exercise. He reached peak exercise during the ETT, which is how we know it wasn't his hips that prevented him from attaining higher than 8.1 METs, because he reached that peak exercise where you measure the amount of METs. So, at his peak exercise, he reached 8.1. What Dr. Lowe's said was he would be safe performing 60% of that, which gets you to 6 METs. And using a chart that Dr. Trangle, appellant's expert, had presented on, 6 METs is like a brisk walk. It does not equate to the strenuous physical exercise that Mr. Baldwin's job required. And that's why the jury found that he posed a direct threat. Now, turning to the business judgment instruction, the omission of objectively reasonable in the direct threat defense, again, which harmed Union Pacific more than it harmed the appellant, because it held us to a higher standard. But that business judgment instruction does not, excuse me, the omission of that objectively reasonable language in the direct threat instruction undercuts the appellant's argument about the business judgment instruction. As a starting point, Instruction 27 on the business judgment rule is an unobjectionable, accurate statement of the business judgment rule. It is true in all cases that just because the jury finds a decision, an employment decision, by an employer to be harsh or unreasonable, that is not enough to find in the plaintiff's  In this case, a juror could have found it harsh or unreasonable that Union Pacific applied restrictions to Mr. Baldwin that removed him from a job he'd worked in for 18 and a half years. But that wouldn't have been sufficient. Nothing in the instruction itself, in Instruction 27 or any other instruction, indicated to the jury that that instruction had anything to do with the direct threat defense instruction. That's true first and foremost because no one could read in the direct threat instruction or even infer the instruction that reasonableness was a factor at all. As I've said, Union Pacific had to prove that Mr. Baldwin did pose a direct threat. And reading the business judgment instruction in the context of the instructions as a whole, it clearly applies to the appellant's various claims, the instructions on the claims. The caption of Instruction 27 makes clear that it's an explanatory instruction, so it explains other instructions. It, along with other explanatory and definitional instructions, come after the instructions on plaintiff's claims before the direct threat instruction, and you wouldn't explain an instruction that you've already provided. And then the specific language of that instruction matters. It tells the jury you may not return a verdict for the plaintiff just because you might disagree with the defendant's decision. The defendant's decision is important language there because that ties back to the instructions on what the plaintiff had to prove for his various claims. In Instruction 16, 17a, and 18, they all talk about the defendant's decision to place work restrictions on plaintiff. And Instruction 19 talks about the employment decision. There's nothing in the direct threat defense instruction that talks about any decision whatsoever. It says it must be proved that Mr. Baldwin posed a direct threat. So for all of those reasons, it's not probable that the jury's verdict would have been any different without the word reasonable in Instruction 27. This case is not the close case that the appellant requires it to be. As I've mentioned, Mr. Baldwin's job required strenuous activity on a daily basis, sometimes in extreme temperatures. He was referred for fitness for duty after two managers saw him struggling to perform his regular duties. Based on those reports, Dr. Holland identified as a concern his aerobic capacity. He tested that aerobic capacity using the two ETT tests, at which Mr. Baldwin never reached more than 8.1 mets. And at the end, Dr. Lowe's confirmed the decision that Dr. Holland had made, which makes a difference from the Fahey Twin City fan companies, because Dr. Lowe's opinion was not simply as an expert witness in this litigation. It was confirming the decision that Dr. Holland made at the time. So the jury in this case correctly found that Mr. Baldwin posed a direct threat to himself, and the district court did not abuse its discretion in the jury instructions or by denying the motion for a new trial. We therefore ask this Court to affirm. Thank you.  Thank you, Your Honor. The language in the cases that I talked about earlier, the Chevron case, the Bragdon case, EEOC versus Walmart, 29 CFRs, 1630, are words like must, shall, required. The standard of proof, the kind of proof that was missing here, is mandatory under U.S. Supreme Court and Eighth Circuit precedent. The jury made no finding about whether the best available evidence was used or the most current medical knowledge was used, because they weren't asked to. That wasn't an element of the direct threat as read to the jury in the pattern instruction. Like the Holtman case, Judge Logan, that you talked about, the accommodation instruction, not being or ignoring the precedent of this circuit, that's what this instruction does as well. It ignores clear mandatory precedent, because this isn't about guesswork. The assessment has to be based on an imminent risk. Nobody else who was an electrician inspector, which is what Mr. Baldwin was, had to take this treadmill test. That was considered non-diagnostic. But you had Union Pacific employees that saw him or allegedly saw him struggling or straining, right? On one day. And wasn't there sufficient evidence admitted here, testimony, in order to reach those conclusions that you're describing, in order to satisfy the burden that the Supreme Court says is required? I submit the answer to that is clearly no, Your Honor. You were 18 years of job performance that is spotless. One 97-degree day, he's asked to do work inside of a locomotive cab that has been baking in a 97-degree day sun, and he goes in with a Tyvek suit on that doesn't breathe to do this work, and he struggles. But there's one significant fact about that day. He goes back and finishes his work that day. That day he finishes his work. So to the extent that there was some imminent risk, apparently no one thought better of saying, well, you should go home or go see the nurse. That never happens. So this non-diagnostic test, when others are available, according to Dr. Holland, Dr. Triangle, other tests are available, spec scans, other things that are more objective. The jury is never told that they have to rely on the best available evidence. That is an essential requirement of the U.S. Supreme Court and this Court. In Sanders, in EEOC v. Walmart, so there's no question about the fact that this instruction, 29, is erroneous. It's wrong. He's cleared. They talk about the doctors. He's cleared by Dr. Lewis, who is the first reviewer, who says it's an exceptional day. It was very hot. He was working inside his cab. Was he struggling that day? Sure. Of course he was. But it was one day, and he sends him back to work. Dr. Harris, so there is a union process here, and remarkably he is ordered to get another test by another doctor. Union Pacific picks the doctor. Dr. Holland picks the doctor. Dr. Harris testifies that he is not a threat to himself or others. This is the clinical correlation that the second ETT test called for, an actual observation, personal observation. So I submit, Your Honor, that this was not harmless error under these circumstances. The jury — The remedy you're seeking is a new trial? New trial, Your Honor. And footnote 10 of their brief talks about what happens in a new trial. I would submit it's an implied concession that there was error in this trial. But what happens? We have an affirmative finding in favor of Mr. Baldwin on the perceived disability. We have an erroneous instruction on the direct threat. I haven't challenged the other answers. They haven't challenged the answer on the perceived disability. So what happens in the new trial is we go back and try direct threat, and if Mr. Baldwin prevails, then damages. The trial doesn't have to be that extensive. That's what — What's your best-case-circuit case on that limitation on the new trial? Well, my best-case-circuit case is just simply on the fact. I don't have a specific case, Your Honor. But there is waiver of any arguments challenged to the perceived disability claim because they don't appeal that. They never argued about that. That's not before the court. We never argued about the claims that we lost. We argued about the perceived disability. We argued about the direct threat. So the new trial is limited. The 97-day when he struggled because he was in that locomotive that was really hot, you know, the direct threat instruction that was actually given by the judge does talk about the significant risk of substantial harm to the health or safety of the person that can't be eliminated by reasonable accommodation. And is the argument of weight when you say that, well, it was just an unusual day? Because isn't it a direct threat? Unusual days happen. You know, it's sort of like — Sure. I once lost a case in the North Dakota Supreme Court on an unusual risk issue where they said masons work in temperatures that can be up to 140 degrees. And while it doesn't happen very often, it does happen, in that the reasonable accommodations are just a limitation about the time you spend in that environment. And that's not an unusual risk, as in my case. Since I'm wondering, you know. Isn't that the sort of same thing that's going on here? Well, you could argue. On that particular day, they didn't put the locomotive inside the air-conditioned building because it was, according to the company, inconvenient. Dr. Harris, who was hand-picked by Dr. Holland, who is also an occupational doctor, to do a review of this circumstance and determined that Mr. Baldwin was safe to return to work. He does — he is the ultimate reviewer of this. What I am saying is this, Your Honor. Those arguments are fact arguments, can be made. They certainly can be made. In the context of the correct instruction that tells the jury that they have to rely on the best available objective evidence or the most current medical knowledge, something they were never told, it's essential. It's an essential part of the proof. That's all I have. I request a reversal in new trial. Thank you. Counsel. The case has been well-briefed. The argument's been helpful. We'll take it under advisement.